# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| CYNTHIA TENER, <br><br> Plaintiff, <br><br> vs. <br><br> MERCY HEALTH SERVICES-IOWA, CORP. d/b/a MERCYONE SIOUXLAND MEDICAL CENTER and TRINITY HEALTH CORPORATION, <br><br> Defendants. | No. 22-CV-4025-CJW-MAR <br><br><br> **ORDER** |

## I. INTRODUCTION

This matter is before the Court on defendants' Motion to Dismiss for Failure to State a Claim. (Doc. 5). Plaintiff timely resisted this motion. (Doc. 12). Defendant filed a timely reply. (Doc. 13). For the following reasons, the Court **grants** defendants' motion.

## II. BACKGROUND

This case involves alleged retaliatory discharge in violation of state law, Count One, and the False Claims Act ("FCA"), Title 31, United States Code, Section 3730(h)(1), Count Two. (Doc. 1, at 9-11). Because original jurisdiction arises under the FCA claim, a federal question, and defendants have not moved to dismiss Count One on its merits, the Court focuses only on Count Two in this order. *See* 28 U.S.C § 1331. The following allegations are taken as true for the purposes of this motion only.

### A. Factual Background

The following facts are taken from plaintiff's complaint. (Doc. 1). In August 2020, defendants hired plaintiff as Director of Cardiovascular Service Line. (*Id.*, at 2).

Beginning in November 2020, plaintiff raised concerns about potential malpractice within the department, specifically about Dr. Giovanni Ciuffo. (*Id.*, at 2 & 3). Other employees, including doctors, also raised these concerns. (*Id.*, at 3). Complaints included that Dr. Ciuffo failed to follow surgical procedure, performed "unsafe add-on procedures," inappropriately performed surgery on high-risk patients, and artificially and inappropriately extended the lifespans of patients in order to improve surgical outcome statistics. (*Id.*, at 4). At least some of these procedures were billed to Medicare. (*Id.*, at 3 & 4).

In February 2021, plaintiff reported concerns about malpractice to her supervisor and the chief medical officer. (*Id.*, at 4). These concerns were later supported by third-party review and statistical data. (*Id.*, at 4 & 5). Dr. Ciuffo continued to perform inappropriate operations, falsify patient risk scores, and generally perform his duties either unethically or unlawfully. (*Id.*, at 5 & 6).

In June or July 2021, plaintiff again reported these activities to her supervisor and the chief medical officer. (*Id.*, at 6). In July 2021, plaintiff "submitted a written complaint about Dr. Ciuffo to MercyOne's internal ethics committee." (*Id.*). The committee leader informed Dr. Ciuffo, who berated plaintiff in response. (*Id.*, at 6 & 7).

In September 2021, plaintiff "learned that physicians at MercyOne in Iowa were reading and interpreting results for cardiac tests" that were conducted out of state without proper license. (*Id.*, at 7). Defendants billed Medicare for the fees associated with this conduct. (*Id.*). Plaintiff reported concerns about the conduct and subsequent unlawful Medicare billing to her supervisor. (*Id.*).

In October 2021, two nurses filed complaints against Dr. Ciuffo. (*Id.*). Dr. Ciuffo complained to plaintiff's supervisor that plaintiff told the nurses to file the complaints and that the complaints were fabricated. (*Id.*, at 8).

In November 2021, plaintiff's supervisor and the vice president of human resources met with plaintiff and informed her that defendants "had recently received complaints that she was creating a 'toxic work environment'" and suspended plaintiff pending investigation. (*Id.*). Defendants fired plaintiff six days later. (*Id.*). Plaintiff's supervisor did not disclose more information about the complaints but notified plaintiff "that he made the decision to fire her because she had created a toxic environment in which her staff did not feel comfortable coming to her for support with their issues." (*Id.*, at 9). Plaintiff now alleges that defendants terminated her employment on the basis of her complaints of malpractice and/or her reports of Medicare billing fraud. (*Id.*, at 9-11).

### B.     *Standard Under FED. R. CIV. P. 12(b)(6)*

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . and a demand for the relief sought."

Rule 12(b)(6) provides that a party may assert the defense of failure to state a claim upon which relief can be granted by motion. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (cleaned up). "Factual allegations must be enough to raise a right to relief above the speculative level," but "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.* at 555-56. Indeed, a theory asserted need only be plausible, which requires "enough fact to raise a reasonable expectation that discovery will reveal evidence of [the conduct

alleged]." *Id.* at 556. In ruling on a Rule 12(b)(6) motion, the court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Simes v. Ark. Jud. Discipline & Disability Comm'n,* 734 F.3d 830, 834 (8th Cir. 2013) (citation omitted).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has *alleged*—but has not *shown*—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added) (cleaned up). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* When a pleading contains no more than conclusions, however, those conclusions "are not entitled to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "[T]here is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *Leimer v. State Mut. Life Assurance Co. of Worcester,* 108 F.2d 302, 306 (8th Cir. 1940); *Warner v. Wartburg Coll.,* No. 21-CV-2029-CJW-MAR, 2021 WL 327375, at *2 (N.D. Iowa July 30, 2021).

### C. False Claims Act

Title 31, United States Code, Section 3730(h)(1) provides,

> Any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged . . . or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

4

Relevant violations here include, under Section 3729, when a party "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Section 3729 further provides, "the terms 'knowing' and 'knowingly' . . . require no proof of specific intent to defraud."

### III. ANALYSIS

"To establish a prima facie case, [plaintiff] must show that (1) she engaged in protected conduct, (2) [defendants] knew she engaged in protected conduct, (3) [defendants] retaliated against her, and (4) 'the retaliation was motivated solely by [plaintiff's] protected activity.'" *United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158, 1166-67 (8th Cir. 2019) (quoting *Schuhardt v. Washington Univ.*, 390 F.3d 563, 566 (8th Cir. 2004)).

#### A. Protected Conduct

Protected conduct "'must have been in furtherance of an FCA action' or an effort to stop one or more FCA violations." *Strubbe*, 915 F.3d at 1167 (quoting *Schuhardt*, 390 F.3d at 567). "[W]histleblowers who lawfully try to stop one or more violations of the Act are protected, without regard to whether their conduct advances a private or government lawsuit under the Act." *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729 (10th Cir. 2019). For an employee's conduct to be protected, it also "'must be aimed at matters which are calculated, or reasonably could lead, to a viable FCA action,' meaning the employee 'in good faith believes, and . . . a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government.'" *Strubbe*, 915 F.3d at 1167 (quoting *Schuhardt*, 390 F.3d at 567).

The facts alleged in the complaint do not indicate that plaintiff was pursuing a qui tam action against defendants. The facts do, however, indicate that plaintiff's conduct

5

was, at least in part, an effort to stop one or more FCA violations.[1] In addition to any instances of fraud that would be incidental to the alleged conduct, plaintiff "reported her concerns about Medicare billing and the unlicensed medical practice to" her supervisor. (Doc. 1, at 7). The Court finds that specifically reporting fraudulent Medicare billing to a supervisor constitutes an effort to stop one or more FCA violations under Section 3730(h)(1). That the alleged facts do not indicate plaintiff was attempting specifically to further a private FCA action is of no consequence. Fraudulent Medicare billing is a matter which reasonably could lead to a viable FCA action, and the facts indicate plaintiff held a good-faith belief that her employer was possibly committing fraud against the government. Accepting the facts as true, the Court finds that a reasonable employee would also believe that a doctor performing unnecessary procedures, (Doc. 1, at 21 & 22), artificially extending patients' lives, (*Id.*, at 24 & 25), and billing Medicare for the labor and equipment necessary for those actions, (*Id.*, at 23 & 26), could possibly be committing fraud against the government. Because the alleged facts indicate that plaintiff acted upon a reasonable, good-faith belief that her employer was committing fraud, her alleged conduct was protected.

### B. *Defendants' Knowledge*

"To adequately plead a retaliation claim, a plaintiff must aver that the [defendants were] on notice of her protected activity." *Reed*, 923 F.3d at 766. Notice that an employee is pursuing a qui tam claim under the FCA is not necessary; notice that an employee is trying to stop FCA violations is sufficient. *Id*. An employee's reporting of fraud or other unlawful activity to a supervisor can be sufficient to put the employer on notice. *See Schuhardt*, 390 F.3d at 568-69. The nature of an employee's responsibilities

---

[1] Defendants do not address whether the alleged facts indicate that plaintiff's conduct was in an effort to stop an FCA violation. (Doc. 6, at 4-6). Notably, Congress amended Section 3730(h)(1) in 2009 and 2010 to include the phrase "or other efforts to stop 1 or more violations of this subchapter." *See Reed*, 923 F.3d at 764-66, for more discussion on this amendment.

6

and obligations can elevate the burden necessary to successfully plead notice. *See, e.g.*, *Reed*, 923 F.3d at 767 ("to adequately plead notice, a compliance employee must allege facts that, make clear that her employer had been put on notice that she was trying to stop it from violating the False Claims Act and not merely doing her job."); *Strubbe*, 915 F.3d at 1168 ("Reporting a license violation to the State does not tell CCMH that these employees believe it is acting fraudulently, especially where Christie pleaded he was 'required to tell' state officials about Richard's license because 'otherwise he himself could lose his licensure' under state law.").

The alleged facts indicate plaintiff did report fraud and unlawful activity to her supervisor. (Doc. 1, at 7). The question, then, is whether that report was sufficient to constitute notice given plaintiff's responsibilities and obligations. Although it does not appear from the alleged facts that plaintiff was a compliance employee, it appears that she may have had responsibilities and obligations to report the conduct alleged. As plaintiff points out, Iowa Administrative Code Section 655-4.6(4)(q) provides that a licensed nurse may be disciplined for "[f]ailing to report suspected wrongful acts or omissions committed by a licensee of the board." Plaintiff, as a licensed nurse, (Doc. 1, at 2), likely had a legal and ethical obligation to report suspected fraud to her supervisor. Also, because plaintiff was in a management position as Director of Cardiovascular Service Line, (*id.*), she would likely have had a general obligation to report potential wrongdoings of cardiovascular physicians. The facts alleged do not indicate that plaintiff reported potential Medicare billing fraud to her employer in such a manner to provide notice she was acting beyond the responsibilities and obligations entailed by her position and occupation. Plaintiff's supervisor's response to her reported concerns, (Doc. 1, at 7), indicates that defendants were on notice that the alleged fraud may have been occurring, but it does not indicate that defendants were on notice that plaintiff was acting to stop one or more violations of the FCA. Also, although the alleged facts are replete

with instances of plaintiff reporting potential medical malpractice, there is only one instance of plaintiff reporting concerns about fraud, the subject of the FCA. This one instance, in the Court's view, is insufficient to put defendants on notice of plaintiff's efforts to stop violations of the FCA, particularly given her managerial and occupational roles, even after drawing every reasonable inference in plaintiff's favor. The Court will assume for the purpose of analyzing the third and fourth elements, in the interest of being thorough, that defendants were on notice.

### C.  *Defendants Retaliated and were Motivated Solely by Plaintiff's Protected Conduct*

In order to make a prima facie claim, plaintiff must plead facts that permit the Court to find as plausible that she was discharged solely because of her protected conduct. *Strubbe*, 915 F.3d at 1168; *see Iqbal*, 556 U.S. at 679. Whether defendants' discharge of plaintiff was retaliatory is questionable, but, for the purposes of this motion only, the Court will assume it was retaliatory. Under this assumption, the alleged facts certainly allow for the possibility that the retaliation was motivated solely by plaintiff's protected activity.

The Court does not find it plausible, however, that plaintiff's conduct protected under the FCA was the sole basis for her discharge. Plaintiff herself offers alternative theories for her discharge, such as her reports of "public safety concerns and malpractice." (Doc. 1, at 10). Although plaintiff is permitted to plead in the alternative under Federal Rule of Civil Procedure 8(d)(2), and the Court will not accept as true facts in Count One that directly conflict with Count Two in the interest of Rule 8(e), the Court can make no reasonable inferences from the facts alleged such that this element can be plausibly satisfied. In other words, it is plausible that defendants' discharge of plaintiff was retaliatory, and it is plausible that defendants discharged plaintiff in part because of her reporting potential fraud. Nevertheless, the Medicare billing concerns are such a

8

minor piece of the overall narrative that it is implausible that this was defendants' sole basis for discharge. It is overwhelmingly likely that any retaliatory discharge was motivated, at least in part, by plaintiff's complaints and reports of malpractice and other unethical behavior within the department or defendants' alleged beliefs that plaintiff was urging others to file complaints and that plaintiff "was creating 'a toxic work environment'". (Doc. 1, at 8). Although these alleged retaliatory motivations are problematic, the retaliation provision of the FCA is not an appropriate remedy for any harm to plaintiff that the potentially unlawful alleged motivations caused. Plaintiff can find sufficient remedy for any alleged harm under alternate state law theories without having to overextend the specific narrow protection provided under the FCA. Thus, because plaintiff has not pleaded facts such that it is plausible defendants had notice of protected conduct or that the protected conduct was the sole reason for the alleged retaliation, Count Two is **dismissed with prejudice**.

### D. *Supplemental Jurisdiction over State Law Claims*

This Court has supplemental jurisdiction over plaintiff's state law claims in Count One under Title 28, United States Code, Section 1367(a) because those claims "form part of the same case or controversy" as the federal question presented in Count Two. The Court declines, however, to exercise supplemental jurisdiction following the dismissal of Count Two. *See* 28 U.S.C. § 1367(c)(3). Because of the early stage at which the claim establishing this Court's original jurisdiction is dismissed, a state court can more appropriately and more effectively resolve the remaining state law claims.

Thus, Count One is **dismissed without prejudice**.

## IV. CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss (Doc. 5) is **granted** as follows:

Plaintiff's claim that defendants violated the retaliatory provision of the False Claims Act in Count Two is **dismissed with prejudice**.

Plaintiff's state law claims in Count One are **dismissed without prejudice**.

**IT IS SO ORDERED** this 27th day of July, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa